**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH SWANGER-METCALFE,** | : | |
| **Plaintiff** | : | **No. 1:17-cv-2000** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **BOWHEAD INTEGRATED SUPPORT** | : | |
| **SERVICES, LLC, et al.** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Defendant Bowhead Integrated Support Services, LLC ("Defendant Bowhead")'s motion to dismiss Plaintiff Elizabeth Swanger-Metcalfe ("Plaintiff")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9.) For the reasons provided herein, the Court will grant Defendant Bowhead's motion and dismiss Plaintiff's complaint without prejudice.

## I. BACKGROUND

### A. Factual Background[1]

The instant dispute arises out of the alleged discrimination and retaliation against Plaintiff during the course of her employment as an automotive worker for Defendant Bowhead. (Doc. No. 1 ¶ 1.) Defendant Bowhead is an Alaska corporation with operations at the Letterkenny Army Depot in Chambersburg, Pennsylvania.[2] (<u>Id.</u> ¶¶ 10, 12.) Plaintiff began her employment

---

[1] With the exception of the information detailing the corporate structure of Defendant Bowhead below, the following background is taken from Plaintiff's complaint. (Doc. No. 1.) The allegations set forth in the complaint are accepted as true for the purpose of the instant motion to dismiss. <u>See</u> <u>Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a 12(b)(6) dismissal, [the Court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

[2] Defendant Bowhead is an indirect subsidiary of Ukpeagvik Inupiat Corporation ("UIC"), an Alaska Native village corporation formed under the Alaska Native Claims Settlement Act, 43

for Defendant Bowhead at the Chambersburg location on March 13, 2015.  (Id. ¶ 18.)  Plaintiff states that Defendant Ray Laubs ("Defendant Laubs"), was her shift supervisor and Defendant Kelly Green-Krebs ("Defendant Green-Krebs"), was employed in Bowhead's human resources department during the relevant period.  (Id. ¶¶ 14, 16.)  Plaintiff avers that both Defendant Laubs and Defendant Green-Krebs had supervisory authority over her.  (Id. ¶¶ 15, 17.)

In her role as an automotive worker for Defendant Bowhead, Plaintiff worked in two areas: the "prep floor" and the "sand room."  (Id. ¶ 21.)  Plaintiff avers that Defendant Bowhead's employees perform different tasks depending on the area in which they are assigned to work.  (Id. ¶ 25.)  On the prep floor, employees perform minor services to vehicles, such as placing and maintaining decals on vehicles and cleaning vehicle interiors.  (Id. ¶ 20.)  Employees who are assigned to work in the sand room prepare vehicles for painting.  (Id.)  When working in the sand room, according to Plaintiff, employees are required to wear protective suits and either a half-mask respirator or a forced-air ventilation hood.  (Id. ¶ 25.)

---

U.S.C. §§ 1601-1629a (2006) ("ANCSA").  (Doc. No. 12 at 7.)  UIC is the sole member of UIC Government Services, LLC ("UIC Government"), an entity charged with operating UIC's government contracting business.  (Id. at 8.)  UIC Government is the sole member of Defendant Bowhead.  (Id.)  Defendant Bowhead attached corporate governance materials confirming this corporate structure as exhibits to its motion to dismiss.  (Doc. Nos. 12-1 through 12-4.)  In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton Twp Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).  Where a party's corporate structure has bearing on its liability, corporate governance documents have been deemed integral to a claim for purposes of the Court's disposition of a motion to dismiss.  See Kaczmarek v. Cty. of Lackawanna Transit Sys., 3:17-CV-00950, 2017 WL 5499160, *5 n.3 (M.D. Pa. Nov. 16, 2017) (stating that defendants could have attached a certificate of incorporation to their motion to dismiss because it had bearing on defendants' potential immunity from liability).

Plaintiff states that during the summer of 2016, she became aware of the fact that she was pregnant (id. ¶ 26), and on September 22, 2016, she received a note from her treating physician indicating that, given her pregnancy, she should be assigned to work only in a well-ventilated area until further notice (id. ¶ 27). Plaintiff further avers that she provided this note to Defendant Green-Krebs who, upon receipt of the note, advised Plaintiff to complete a "fitness for duty certification and release to return to work form." (Id. ¶ 28.) On or around October 14, 2016, Plaintiff returned this form to Defendant Green-Krebs. (Id. at 29.)

According to Plaintiff, the completed form placed certain restrictions on her ability to work, including a lifting restriction of no more than ten to twenty pounds, six to eight hours of standing or walking per day, use of her hands repetitively for five to eight hours per day, and a requirement that she work in a well-ventilated area. (Id.) The completed form also indicated that Plaintiff would have no work restrictions once six weeks had passed after she gave birth. (Id. ¶ 30.) On October 21, 2016, Plaintiff presented a second note from her treating physician stating that she "should continue to be excused from working in small areas that could expose her to certain chemicals and agents" and requiring that she work in a well-ventilated area. (Id. ¶ 31.) Plaintiff states that between September 22, 2016 and November 18, 2016, she continued her employment as an automotive worker and was able to complete the essential job functions of an automotive work for Defendant Bowhead, and that the only accommodation she required was that she not be assigned to work in the sand room. (Id. ¶¶ 33-35.)

On approximately November 18, 2016, Defendant Laubs advised Plaintiff's shift leader that Plaintiff would be sent home if she did not agree to work in the sand room. (Id. ¶ 36.) Plaintiff further avers that she immediately met with Defendant Laubs and Defendant Green-Krebs to "seek clarification." (Id. ¶ 37.) Plaintiff states that during that meeting she was told

that pregnancy is not a disability and that she could either work in the sand room or take leave under the Family and Medical Leave Act ("FMLA") and apply for disability benefits.  (Id. ¶ 38.) Plaintiff further states that she was told that the reason she could no longer be accommodated "was that other employees had complained, and that Defendant Bowhead could not show 'favoritism' in determining work assignments."  (Id. ¶ 39.)  Plaintiff was also informed that she could not be relocated within the facility to a different position.  (Id. ¶ 40.)  Plaintiff alleges that other similarly situated employees were routinely moved to different positions within the facility. (Id. ¶ 41.)  Plaintiff states that she was "extremely upset and distressed and was moved to the point of tears" after the meeting, and that Defendant Laubs mocked and made fun of Plaintiff's reaction.  (Id. ¶¶ 42-43.)

Plaintiff states that on or around November 23, 2016, she elected to take FMLA leave. (Id. ¶ 44.)  Plaintiff avers that on the same day, her mother inquired if Plaintiff could retrieve her belongings from her locker.  (Id. ¶ 45.)  Defendant Green-Krebs allegedly told Plaintiff that she could not retrieve her belongings "from a safety stand-point."  (Id. ¶ 46.)  Plaintiff avers that, as a result of the conduct of Defendants, she felt "humiliated, degraded, victimized, embarrassed, and emotionally distressed."  (Id. ¶ 49.)  Plaintiff alleges that, as a result of the Defendants' discriminatory treatment of Plaintiff, she has suffered severe emotional distress and physical ailments.  (Id. ¶ 51.)  Plaintiff further alleges that she has suffered and will continue to suffer "the loss of income, loss of a salary, bonuses, benefits and other compensation which such employment entails, and that she has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses."  (Id. ¶ 52.)

### B. Procedural Background

Plaintiff filed a complaint against Defendants with the Equal Employment Opportunity Commission ("EEOC") on or about December 23, 2016.  (Id. ¶ 4.)  Plaintiff received a notice of right to sue from the EEOC on or about August 7, 2017.  (Id. ¶ 5.)  On November 1, 2017, Plaintiff filed the instant complaint with this Court, alleging one count of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) ("Count I"), one count of retaliation under Title VII, 42 U.S.C. § 2000e-3(a) ("Count II"), and one count of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) ("Count III").  On March 23, 2018, Defendant Bowhead filed a motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 9), and filed a brief in support thereof on April 6, 2018 (Doc. No. 12).  Plaintiff filed her brief in opposition to Defendant Bowhead's motion to dismiss on April 20, 2018 (Doc. No. 15), to which Defendant Bowhead filed a reply brief on May 4, 2018 (Doc. No. 16).  Having been fully briefed, Defendant Bowhead's motion is ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  Indeed, "where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, a court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters

incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck, 452 F.3d at 260 (citation and quotation marks omitted).

## III.    DISCUSSION

In moving for dismissal of Plaintiff's complaint, Defendant first contends that Counts I and II fail as a matter of law because Defendant Bowhead is a wholly-owned subsidiary of an Alaska Native Corporation, and thus is exempt from liability under Title VII.  (Doc. No. 12 at 6.) Secondly, Defendant moves for dismissal on the basis that Count I fails to state a claim upon which relief may be granted because Plaintiff does not plead facts that plausibly connect her pregnancy to any alleged adverse employment action and plausibly support a reasonable inference of disparate treatment.  (Id.)  Defendant similarly argues that Count II fails to state a claim because Plaintiff's complaint fails to plead facts thar plausibly establish the essential elements of retaliation under Title VII.  (Id.)  Lastly, Defendant argues that Count III fails to state a claim because Plaintiff's complaint does not sufficiently allege facts supporting a reasonable inference that she suffered from a disability within the meaning of the ADA at the time she sought an accommodation from Defendant Bowhead.  (Id.)

### A.    Defendant Bowhead's Liability Under Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for any "employer," as defined by Title VII,

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race, color,
> religion, sex, or national origin; or (2) to limit, segregate, or classify his employees
> or applicants for employment in any way which would deprive or tend to deprive
> any individual of employment opportunities or otherwise adversely affect his status
> as an employee, because of such individual's race, color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2(a).  Title VII defines the term "employer" to be a "person engaged in an industry affecting commerce who has fifteen or more employees."  Id. § 2000e(b)(1).  Wholly-owned government corporations, Indian tribes, and bona fide private membership clubs, however, are statutorily excepted from the scope of Title VII because they are not considered to be "employers" under Title VII.  Id. § 2000e(b)(1)-(2); see also Fox v. Portico Reality Servs. Office, 739 F. Supp. 2d 912, 915 (E.D. Va. 2010).  Relevant to the Court's analysis here is the statutory exception for Alaska Native Corporations created under the ANCSA, which provides that:

> For the purposes of implementation of the Civil Rights Act of 1964 [42 U.S.C. § 2000a et seq.], a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b)(1) of Public Law 88-352 (78 Sta. 253), as amended [42 U.S.C. § 2000e(b)(1)], or successor statutes.

43 U.S.C. § 1626(g).  The plain terms of the statute exclude from this definition of "employer" only (i) "Native Corporations," and (ii) "corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity."  Id.

Defendant Bowhead states that "a plain and logical interpretation of § 1626(g) confirms that indirect subsidiaries are indeed exempt" from the Title VII definition of "employer."  (Doc. No. 12 at 12.)  Defendant Bowhead further argues that Congress's use of the word "affiliates" signals its intent to include indirect subsidiaries within the exception provided in § 1626(g).  (Id. at 13.)  As detailed above, Defendant Bowhead is a direct subsidiary of UIC Government.  (Id. at 7.)  UIC Government is, in turn, a direct subsidiary of UIC, a Native Corporation.  As a result, Defendant Bowhead is an indirect subsidiary of UIC.  See Fox, 739 F. Supp.2d 912 (explaining indirect subsidiary relationship).

Defendant Bowhead acknowledges that other courts have held that the exception in § 1626(g) applies only in the case of the direct subsidiaries of Native Corporations.  (Doc. No. 12 at 12.)  The district court in Fox, in finding that indirect subsidiaries of Native Corporations are not excepted under § 1626(g), wrote that, despite ambiguities in the text of the statute,

> [I]t is useful and appropriate to consider the purpose of § 1626(g) in resolving the contextual ambiguity presented by the statutory language.  The Senate Report accompanying the legislation enacting § 1626(g) states that "[s]ubsection (g) is intended to facilitate Alaska Native shareholder employment programs by resolving any uncertainty as to the applicability of the Civil Rights Act of 1964 to certain business enterprises in which Native Corporations participate. . . .Limiting the scope of § 1626(g) to Native Corporations' direct subsidiaries, and subjecting Native Corporations' indirect subsidiaries to Title VII, is the statutory interpretation most faithful to § 1626(g)'s clear purpose. . . .Indeed, to accept [D]efendant's argument would be to impute to Congress an intent to allow companies only distantly related to a Native Corporation to engage in racial, gender, national origin, or religious discrimination in the workplace with impunity, regardless of whether the subsidiary has any appreciable relationship with a Native Corporation or even employs Alaska Natives.

Fox, 739 F.Supp 2d at 921-23 (citations omitted).  Other courts have similarly held that indirect subsidiaries of Alaska Native Corporations are not subject to the exceptions provided in § 1626(g).  See Herndon v. Alutiiq Educ. & Training, LLC, No. 2:16-cv-72, 2016 WL 9450429 (E.D. Va. May 6, 2016) (holding that where corporate structure and operating procedures created stronger ties to parent corporation than present in Fox, Defendant was still an indirect subsidiary of a Native Corporation and accordingly not entitled to Title VII exemption under § 1626(g)); Naigan v. Nana Servs., LLC, No. 12-cv-2648 BAS (NLS), 2015 WL 300368 (S.D. Cal. Jan. 22, 2015) (holding that a subsidiary of a subsidiary of a Native Corporation is not exempted from Title VII).  Here, as in Fox and the other cases cited above, Defendant Bowhead is not a direct subsidiary of an Alaska Native Corporation, and, accordingly, as an indirect subsidiary, is not entitled to the exception from Title VII set forth in 43 U.S.C. § 1626(g).  Having found unpersuasive Defendant Bowhead's argument that Counts I and II fail by operation of law, the

Court next considers whether Plaintiff's complaint fails to state a claim for Title VII discrimination and retaliation in Counts I and II.

**B.      Discrimination Under Title VII and the Pregnancy Discrimination Act (Count I)**

The Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), passed in 1978, amended Title VII's definitions subsection to include specific language regarding pregnancy. See Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1344-45 (2015).  The PDA sought to clarify that discrimination "because of sex" includes discrimination because of "pregnancy, childbirth, or related medical condition" and mandates that women affected by such circumstances "shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."  42 U.S.C § 2000e(k); see also AT&T Corp. v. Hulteen, 556 U.S. 701, 705 (2009).  Thus, the focus of a PDA claim is whether "an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work."  Young, 135 S. Ct. at 1344.

In order to state a prima facie case of discrimination under the PDA, a plaintiff must establish that: (1) she is or was pregnant and that her employer knew of her condition; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision that would allow a court to infer discrimination.  Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 366 (3d Cir. 2008).  A plaintiff alleging employment discrimination, however, is "not required to plead facts to establish a prima facie case under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Lucchesi v. Day & Zimmerman Grp., No. 10-4164, 2011 WL 1540385, at *4 (E.D. Pa. Apr. 21, 2011) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508

(2002)).  In the context of an employment discrimination claim, a plaintiff's complaint must

meet only "the simple requirements of Rule 8(a)."  Swierkiewicz, 534 U.S. at 513.

In moving to dismiss Count I, Defendant Bowhead does not contest that Plaintiff's

complaint satisfies the first two elements of a prima facie claim of discrimination under the PDA

– that Plaintiff was pregnant and that she was qualified for the job she held – but does dispute

whether Plaintiff has alleged facts sufficient to establish the third and fourth elements.  (Doc. No.

12 at 17.)  With regard to the third element of a PDA claim, Plaintiff's complaint does not

explicitly state what adverse employment action she suffered.  In her complaint, Plaintiff avers

that upon learning she could no longer work only on the prep floor she was given two options:

either agree to work in the sand room or take FMLA leave and apply for disability benefits.

(Doc. No. 1 at 7.)  Plaintiff alleges that on or around November 23, 2016, she was "forced" to

take FMLA leave.  (Id. at 8.)  While not explicitly stated in Plaintiff's complaint, the Court will

interpret Plaintiff's election to take FMLA leave as the adverse employment action she alleges.

Defendant Bowhead argues that these allegations are "threadbare, circular and conclusory

statements."  (Doc. No. 12 at 18.)

The Third Circuit has held that an adverse employment action is one which "is serious

and tangible enough to alter an employee's compensation, terms, conditions, or privileges of

employment."  Cardenas v. Massey, 269 F.3d 251, 253 (3d Cir. 2001) (internal quotations

omitted).  When an employee's salary, reporting requirements, and general duties remain the

same, there is typically insufficient evidence of an adverse employment action.  See Fiorentini v.

William Penn Sch. Dist., 150 F. Supp. 3d 559, 567 (E.D. Pa. 2016) (holding that an employee's

reassignment did not constitute an adverse employment action).  However, a change in

employment status, responsibilities, or duties that does not result in a reduction of pay or benefits

may nonetheless qualify as an adverse employment action. Dilenno v. Goodwill Indus. Of Mid-Eastern Pa., 162 F.3d 235, 236 (3d Cir. 1998) (holding that a transfer to a job that an employer knows an employee cannot do may constitute adverse employment action for the purposes of establishing a Title VII discrimination claim).

Here, Plaintiff alleges that Defendant Bowhead forced her to take FMLA leave by presenting her with the choice of either working in the sand room, despite her physician's note advising against work in a poorly-ventilated area, or taking FMLA leave and applying for disability benefits. (Doc. No. 1 ¶ 38.) Plaintiff's complaint alleges that Defendant Bowhead was aware of her inability to work in the sand room given her pregnancy, as Plaintiff presented numerous physician notes stating that she was to work only in well-ventilated areas. (Id. ¶¶ 27, 29, 31.) In requiring that Plaintiff do a job she was unable to do, or in the alternative, take FMLA leave, the Court concludes that Plaintiff has sufficiently alleged facts that supporting a reasonable inference that she suffered an adverse employment action.

The fourth element of a claim of discrimination under the PDA requires that the Plaintiff provide evidence of a nexus between the pregnancy and the adverse employment action that would permit a factfinder to draw an inference of discrimination. See Doe, 527 F.3d at 365. One method of demonstrating this nexus is through evidence of disparate treatment, where a plaintiff "shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class." Id. at 366 (citing Iadimarco v. Runyon, 190 F.3d 151, 162 (3d Cir. 1999). Another means by which a plaintiff can establish this nexus is to present evidence of temporal proximity between the adverse employment action and the pregnancy. See id. at 369. Plaintiff proceeds under the former approach, and accordingly "may make out a prima facie case under the McDonnell Douglas framework by showing that she. . .sought accommodation, that

the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" Young, 135 S. Ct. at 1342.

The Third Circuit has explained that "[w]hile 'similarly situated does not mean identically situated, the plaintiff [and the comparators] must nevertheless be similar in 'all relevant respects.'" Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F. 3d 1555, 1562 (11th Cir. 1997)). Relevant factors include "(1) whether the employees had the same supervisor; (2) whether the employees were 'subject to the same standards[;]' and (3) whether the employees 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" McCullers v. Napolitano, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting Radue v. Kimberly – Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). Plaintiff's complaint will "survive a motion to dismiss as long as it supports an inference that people outside of Plaintiff's protected class were treated differently." Fortes v. Boyertown Area Sch. Dist., No. 06-0878, 2006 WL 3043108 at *4 (E.D. Pa. Oct. 20, 2006) (citing E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 348 (3d. Cir. 1990)).

Defendant Bowhead disputes whether Plaintiff's complaint sufficiently alleges that Defendant Bowhead accommodated other employees outside of Plaintiff's protected class as required to show disparate treatment. (Doc. No. 12 at 13-14.) In her complaint, Plaintiff alleges that when she was informed she would no longer be accommodated, she immediately sought a meeting with Defendant Green-Krebs and Defendant Laubs (Doc. No. 1 ¶¶ 36, 37), and at that meeting, Defendant Green-Krebs and Defendant Laubs told her that she could not be relocated to a different department within the facility (id. ¶ 40). Plaintiff further avers that "[u]pon

information and belief, other similarly situated employees were routinely moved to different departments within the facility."  (Id. ¶ 41.)

As Defendant Bowhead correctly points out, Plaintiff's complaint does not identify any of the similarly situated employees who she alleges were moved to different departments within the facility.  Further, Plaintiff's complaint does not plead facts that indicate whether Defendant Bowhead was providing those employees an accommodation when it relocated them to different departments.  District courts have found that a plaintiff's failure to identify similarly situated individuals outside of the plaintiff's class who were treated more favorably is grounds for dismissal of plaintiff's complaint.  (See Magerr v. City of Phila., No. 15-4264, 2016 WL 1404156, at *8 (E.D. Pa. Apr. 11, 2016) (finding that the plaintiff failed to state a sufficient claim when he did not identify others who were treated better but instead claimed that he was denied "the same terms and conditions of employment available to other employees"); Boone v. Pa. Se. Transp. Auth., 14-1373, 2014 WL 6861581, at *4 (E.D. Pa. Dec. 5, 2014) (finding that the plaintiff failed to state a sufficient claim in part because she did not "allege any facts regarding individuals . . . with whom we can compare plaintiff"); Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, No. 13-2463, 2014 WL 2921534, at * 3 (E.D. Pa. June 27, 2014) (finding that the plaintiff failed to state a sufficient claim when she alleged only that she was subject to discipline "for which other similarly situated and younger employees were not disciplined").

If similarly situated individuals cannot be specifically identified, factual support must nevertheless be provided that plausibly creates an inference of discrimination.  See, e.g., Fortes, 2006 WL 3043108 at *4 (finding that, despite not specifically identifying individuals, plaintiff sufficiently stated a discrimination claim by alleging sufficient factual matter supporting a

reasonable inference that similarly situated individuals were treated preferentially because of their race). Plaintiff has not only failed to identify any similarly situated individuals outside of her class who were accommodated, but she also provides no factual details as to how other employees of Defendant Bowhead were so accommodated. Plaintiff's complaint contains only a conclusory assertion that other similarly situated employees of Defendant Bowhead were routinely moved to other departments. Plaintiff has not pleaded facts that support a reasonable inference that Defendant Bowhead accommodated similarly situated employees "similar in their ability or inability to work." See Young, 135 S. Ct. at 1342. Accordingly, the Court will grant Defendant's motion to dismiss as to Count I.

###### C.      Retaliation Under Title VII and the PDA (Count II)

Title VII makes it illegal for an employer to discriminate against an employee because she opposed a practice made unlawful by Title VII, or because she participated in an investigation or proceeding under Title VII. See 42 U.S.C. 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. See Marley v. Postmaster Gen. of the U.S., 747 F. App'x 901, 903 (3d Cir. 2018). The fact that a plaintiff is unable to establish an underlying discrimination claim does not mean that she cannot establish a retaliation claim. See Moore v. City of Phila., 461 F.3d 331, 344 (3d Cir. 2006) ("a victim of retaliation 'need not prove the merits of the underlying discrimination complaint' in order to seek redress") (citation omitted).

As to protected activity, the Third Circuit has held that the anti-retaliation provision of Title VII "protects those who participate in certain Title VII proceedings (the 'participation

clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." Moore, 461 F.3d at 341 (citing Slagle v. Cty. of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). Protected activity for a retaliation claim includes "not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (internal quotation marks omitted). The plaintiff's complaint "must allege that [her] opposition was to discrimination based on a protected category" and the plaintiff must have an "objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." Id. at 193-94. In determining whether a plaintiff adequately opposed discrimination, the Court "look[s] to the message. . . conveyed [by a plaintiff's conduct] rather than the means of conveyance." Moore, 461 F.3d at 343 (quoting Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc., 450 F.3d at 130, 135 (3d Cir. 2006)).

In her complaint, Plaintiff does not specifically identify the protected activity in which she participated that would satisfy the first element of a retaliation claim under Title VII. Plaintiff alleges that on November 18, 2016, she met with Defendant Laubs and Defendant Green-Krebs to "seek clarification" regarding her shift leader's statement that Plaintiff would be sent home if she did not agree to work in the sand room. (Doc. No. 1 ¶ 38.) Plaintiff also alleges that during the meeting, Defendant Green-Krebs told her that Plaintiff could no longer be accommodated because of concerns related to favoritism in determining work assignments. (Id. ¶ 39.) Plaintiff avers that on approximately November 23, 2016, she was "forced" to take FMLA leave. (Id. ¶ 44.) The Court will interpret Plaintiff's participation in this meeting as the protected activity she alleges.

Defendant Bowhead argues that Plaintiff's retaliation claim under Title VII should be dismissed because Plaintiff fails to plead facts which "plausibly identify how she 'oppos[ed], or participate[d] in a proceeding' contesting [Defendant Bowhead's] activity." (Doc. No. 12 at 20.) Defendant Bowhead further states that Plaintiff's allegations as to her claim of retaliation under Title VII are conclusory (id. at 21), and that Plaintiff has failed to allege that any of her complaints characterized the allegedly unfavorable treatment as discriminatory (id.). Plaintiff argues that she engaged in protected activity because she "protested Defendant Bowhead's unlawful conduct at the time they forced her out of work on unpaid leave." (Doc. No. 15 at 17.)

Plaintiff does not adequately allege facts that support a reasonable inference that she participated in protected activity under Title VII. A plaintiff claiming retaliation under Title VII must have a good-faith basis for his or her complaint. See Moore, 461 F.3d at 341 (3d Cir. 2006) ("Whether the employee opposes, or participates in a proceeding against the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.") Plaintiff does not assert in her complaint that she sought the meeting with Defendant Green-Krebs and Defendant Laubs to complain of pregnancy discrimination or sex discrimination. Further, nowhere in Plaintiff's complaint does she aver that the ultimatum presented by her shift leader that she either work in the sand room or go home was attributable to her pregnancy or her gender.

To qualify as protected activity, a plaintiff must show that she did more than complain of "unfair treatment in general," or otherwise make vague reports about perceived slights in the workplace. See Klastow v. Newton Friends Sch., 515 F. App'x 130, 133 (3d Cir. 2013) (general complaints did not support a retaliation claim for age discrimination when the plaintiff never referred to age discrimination); Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir.

1995) (explaining that a general complaint about unfair treatment is insufficient to establish "protected activity" under Title VII); Robuck, 2010 WL 4553562, at *6 (where the plaintiff did not complain of sex discrimination to his supervisor, his complaint did not constitute protected activity under Title VII). Plaintiff's complaint does not allege that her participation in the meeting with Defendant Green-Krebs and Defendant Laubs was due to discrimination based on her pregnancy or gender, and, accordingly, Plaintiff has failed to allege facts sufficient to support a reasonable inference that she participated in protected activity under Title VII.

To satisfy the second element of adverse action, Plaintiff must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse," meaning that they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore, 461 F.3d at 341 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). In Burlington, clarifying what a plaintiff must show to make out retaliation claims under Title VII, the Supreme Court found that "the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, 'that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" Id. (quoting Burlington, 548 U.S. at 2412-13). In establishing the second element of a retaliation claim under Title VII, a plaintiff must also allege that the adverse action occurred either after or contemporaneous with the employee protected activity she alleges. Marley, 747 F. App'x at 903.

Plaintiff does not specifically identify the alleged adverse action she suffered as part of her retaliation claim under Title VII. In her complaint, Plaintiff avers only that Defendant Bowhead retaliated "against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendant

[Bowhead]." (Doc. No. 1 ¶ 61.) Defendant Bowhead argues that Plaintiff fails to plead facts necessary to support a finding that she suffered adverse action by Defendant Bowhead, that she does not specifically identify the adverse action she suffered, and that her allegations are not entitled to any weight because they are conclusory. (Doc. No. 12 at 17.) Plaintiff argues that she has established that she suffered an adverse action by losing income and sustaining emotional distress as a result of her gender and pregnancy discrimination. (Doc. No. 15 at 17.)

As detailed supra, the Court determined that Plaintiff did not sufficiently establish that she participated in protected activity under Title VII. Even if she had established that the meeting with Defendant Green-Krebs and Defendant Laubs constituted protected activity under Title VII, however, Plaintiff does not allege that she suffered adverse action contemporaneously with or after that meeting. The ultimatum of working in the sand room or taking leave initially presented to Plaintiff by her shift leader, and subsequently by Defendant Green-Krebs, does not constitute adverse action since it occurred prior to the protected activity, and not contemporaneous with or after the meeting. See Marley, 747 F. App'x at 903 (stating that adverse action element must occur either after or contemporaneous with employee's protected activity). Accordingly, Plaintiff has not alleged facts that support an inference that she suffered adverse action for the purposes of stating a claim of retaliation under Title VII.

The third element of a retaliation claim requires that the plaintiff show a causal connection between the employee's protected activity and the employer's adverse action. E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444 (3d Cir. 2015). "To demonstrate a link between the protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" Daniels, 776 F.3d at 196. In the absence of "such a close temporal proximity," courts consider "the circumstances as a whole including

any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." Id.

Given that Plaintiff has not sufficiently alleged that she participated in protected activity or that she suffered adverse action, the Court will not evaluate Plaintiff's complaint as it pertains to the third element of a retaliation claim under Title VII. Accordingly, the Court will grant Defendant Bowhead's motion to dismiss as to Count II.

**D.    Discrimination Under the ADA (Count III)**

In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (quoting Gaul v. Lucent Tech. Inc., 134 F.3d 576, 581 (3d Cir. 1998). The ADA provides that an individual is "disabled" when she suffers, among other things, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12101(1)(A). In 2008, Congress passed the ADA Amendments Act ("ADAAA"), which loosened the standards by which courts are to interpret the ADA's language, specifically providing that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." Id. § 12102(4)(A).

Defendant Bowhead argues that Plaintiff's complaint fails to plead facts plausibly demonstrating that Plaintiff suffered from a disability (Doc. No. 12 at 23), and further states that

pregnancy itself is not a qualifying disability under the ADA (id.). Plaintiff argues that while pregnancy alone is not a disability under the ADA, courts have held that complications arising out of pregnancy can constitute a disability as defined by the ADA. (Doc. No. 15 at 18.) Plaintiff argues that because breathing constitutes a major life function, Plaintiff's breathing of "debris filled air" while working in the sand room could have caused her to sustain serious pregnancy complications. (Id.) Plaintiff does not aver in her complaint that she suffered from pregnancy-related complications at the time she alleges she sought an accommodation from Defendant Bowhead.

Courts that have addressed whether pregnancy, absent complications, is itself a disability have determined that a normal pregnancy is not a physical impairment limiting one or more major life activities, and thus not a disability under the ADA. See Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 553 (7th Cir. 2011) (noting that courts consistently determine that pregnancy, absent unusual circumstances, is not a physical impairment), abrogated on other grounds by Young, 135 S. Ct.1338; Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 333 (E.D. Pa. 1994); see also Kelly v. Horizon Med. Corp., No. 3:11-1501, 2014 WL 1293859, at *11 (M.D. Pa. Mar. 31, 2014) (explaining that the ADA "statute itself clearly indicates that pregnancy was not to be considered an impairment covered by the Act"). "This interpretation of the ADA is consistent with the concept that discrimination [on the basis of] pregnancy is already covered by the PDA." Id. quoting Byerly v. Herr Foods, Inc., No. 92-7382, 1993 WL 101196 at *4 (E.D. Pa Mar. 9, 1995). While Plaintiff argues that working in the sand room could have caused her to sustain pregnancy complications at some point in the future, Plaintiff does not allege that she suffered from any pregnancy-related complications at the time she sought an accommodation. As a result, Plaintiff's claim of discrimination under the ADA fails because she

has not alleged facts sufficient to support a reasonable inference that she is disabled under the ADA. Accordingly, the Court will grant Defendant Bowhead's motion to dismiss as to Count III.

In civil rights cases, a district court must generally <u>sua</u> <u>sponte</u> extend to a plaintiff an opportunity to amend her complaint before dismissal. <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007). Accordingly, the Court will grant Plaintiff leave to amend her complaint in an effort to correct the pleading deficiencies identified in this Memorandum.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Bowhead's motion to dismiss (Doc. No. 9), and dismiss all of Plaintiff's claims without prejudice. The Court will grant Plaintiff leave to amend her complaint. An Order consistent with this Memorandum follows.